# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| PLASTIPAK PACKAGING, INC., | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) 2:99-cv-245 |
| FREDERICK PETER DEPASQUALE, | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Pending before the Court is the MOTION FOR LEAVE OF COURT TO PERMIT EXECUTION UPON FUNDS TRANSFERRED TO LIFE INSURANCE POLICY (Document No. 153) which was filed by Plaintiff Plastipak Packaging, Inc. ("Plastipak") in March 2008. Shortly thereafter, Defendant filed a response and Plastipak filed a reply (Document Nos. 155, 156). The case was then stayed at the joint request of the parties for six months while they negotiated a stipulation of facts. After the joint Stipulation of Facts was filed on October 10, 2008, the parties have engaged in a second round of briefing (Document Nos. 165, 166, 167, 170). Also pending is the MOTION FOR ENTRY OF CASE MANAGEMENT ORDER (Document No. 171), which was filed by Plastipak at the conclusion of the second round of briefs. Plastipak has also filed two supplements to the Motion for Entry of Case Management Order (Document Nos. 172, 174) and Defendant has filed a Response (Document No. 173). The motions are ripe for disposition.

Procedural History

This case started as a vendor/customer dispute but has evolved into a tortuous, decade-long effort by Plastipak to satisfy the judgment it obtained against Frederick Peter DePasquale

("Mr. DePasquale" or "Defendant").  Proceedings have occurred in both federal and state trial and appellate courts.  The present skirmish commenced with the filing of a Motion for Leave to Permit Execution Upon Funds Transferred to Life Insurance Policy by Plastipak in March 2008.  The parties thoroughly briefed the issues (Document Nos. 153, 155, 156).  On April 9, 2008, soon after the conclusion of the initial briefing, the Court issued an Order to schedule oral argument "unless the parties acknowledge and agree that an evidentiary hearing to resolve factual disputes is necessary in order to rule on the pending motion...."  During a telephone conference on April 11, 2008, counsel for both parties requested that the oral argument be postponed indefinitely so that the parties could attempt to stipulate to the relevant facts.  Some six months later, on October 10, 2008, the parties filed a Joint Motion for Proposed Briefing Schedule (Document No. 158) and a Stipulation of Facts (Document No. 159).  In a revised Joint Motion, which was granted by the Court, the parties proposed that briefing be completed by December 11, 2008.  Neither party informed the Court that further factual development was necessary, nor did either party object to the content of the Stipulation of Facts.

In accordance with the parties' joint briefing schedule, Plastipak filed a brief in support of the motion for leave to execute on the life insurance policy (Document No. 165), DePasquale filed a brief in opposition (Document No. 166), Plastipak filed a reply brief (Document No. 167), and DePasquale filed a sur-reply brief (Document No. 170).  On December 23, 2008, eight days after filing its Reply Brief, Plastipak filed the pending Motion for Entry of Case Management Order (Document No. 171), which has led to additional submissions by each side (Document Nos. 172-174).  As may be gleaned by the above recitation, this case has been tenaciously

litigated.[1]

Motion for Entry of Case Management Order

As an initial matter, the Court must address Plastipak's motion to reopen discovery. Plastipak cites Fed. R. Civ. P. 43(c) for the proposition that the Court may set forth a schedule for further discovery, briefing and an evidentiary hearing. In essence, Plastipak argues that the legal issues which govern the ownership of the funds at issue are dependent upon the intent of the parties and therefore, that it should be entitled to depose Mr. and Mrs. DePasquale. In the alternative, Plastipak seeks a stay pending resolution of the action it recently filed in the Pennsylvania state court. Defendant has consistently resisted such discovery and maintains that it is not necessary. However, Defendant submitted an Appendix to its Brief in Opposition which contains certain exhibits (a deed, a complaint and two docket sheets) that were not included in the parties' Stipulation of Facts. Similarly, Plaintiff submitted a deed with its Reply Brief.

Federal Rule of Civil Procedure 43(c) states, in relevant part: "When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions." District courts have broad discretion in evaluating such requests and may "turn a deaf ear" where the request for an evidentiary hearing is not timely requested. *See Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249-50 (11th Cir. 2005).

In April 2008, the parties jointly requested a postponement so that they could attempt to

---

[1] The end is not yet in sight. On January 8, 2009, Plastipak filed a Complaint against Mr. and Mrs. DePasquale in the Court of Common Pleas of Allegheny County (GD-08-4796). In its Second Supplement, Plastipak characterizes the Complaint as an "independent civil action" in which Plastipak is seeking to prove a fraudulent transfer, as opposed to an action for attachment or garnishment of the Penn Mutual insurance policy.

agree on the relevant facts. Subsequently, in October 2008, the parties jointly filed a Stipulation of Facts and proposed a briefing schedule to finally resolve the pending motion. *See* Reply Brief at 5 n.5 (during status conference, parties agreed to proceed to develop a stipulated factual record). Neither side notified the Court that their Stipulation of Facts was inadequate or that further factual development would be necessary. In particular, Plastipak did not contend that it was necessary to take depositions of the DePasquales. It was not until *after* the filing of its Reply Brief that Plastipak sought to reopen discovery. This request was not timely. Moreover, given the litigious history of these parties, it is unlikely that further discovery, briefing and an evidentiary hearing would be consistent with the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. The Court will decide this action in accordance with the stipulated factual record and briefing schedule which were jointly agreed upon by the parties. The Court will not consider the supplemental materials submitted by either party.

Accordingly, the MOTION FOR ENTRY OF CASE MANAGEMENT ORDER (Document No. 171) is **DENIED**.

Motion for Leave to Execute

The Court turns now to the substantive dispute. The factual background is taken from the Stipulation of Facts. The Court will consider the arguments raised in the parties' second round of briefs (Document Nos. 165, 166, 167, 170), which are based on the stipulated facts.

On May 6, 2002, a final judgment was entered in Plastipak's favor against Mr. DePasquale after a jury trial in the amount of $767,393.62 plus interest at the rate of 6% from December 10, 2001. Apparently, Mr. DePasquale has no assets which Plastipak can attach and

execute upon to satisfy its judgment. However, Mr. DePasquale is the sole owner of a single-premium life insurance policy (the "Penn Mutual Policy"), which was issued on January 15, 1985 with his wife as the designated beneficiary. By Order dated July 18, 2002, this Court (through the Honorable Robert J. Cindrich) ordered that Plastipak "shall take no steps to execute on or garnish the [Penn Mutual Policy] without first seeking leave of this court." Subsequently, the United States Court of Appeals for the Third Circuit affirmed that a Pennsylvania statute prohibits Plastipak from executing upon the life insurance policy directly, but held "that once funds have been removed from the life insurance policy by [Mr. DePasquale]," Plastipak is "entitled to execute on those funds removed as loans."

Dating back to no later than October 1998, Mr. DePasquale had withdrawn funds from the Penn Mutual Policy in the form of loans totaling at least $784,000. The policy loan funds were deposited into a joint checking account held by Mr. DePasquale and his wife, Norina DePasquale, as tenants by the entireties.

On February 27, 2004, Mr. DePasquale learned that he and other members of his family had been awarded $3,498,500 by an arbitration panel in an action against Cincinnati Insurance Company (the "Arbitration Proceeds"). The underlying arbitration involved damage to commercial property that Mr. and Mrs. DePasquale had owned as tenants by the entireties prior to October 28, 2003, but which had been thereafter titled in Mrs. DePasquale's name individually. On February 27, 2004, Mr. DePasquale contacted Penn Mutual to ascertain the payoff amount on his policy loans, which was $948,516.66. A decision was made to use a portion of the Arbitration Proceeds to repay the policy loans.

On March 9, 2004, the Grogan Graffam law firm released a significant portion of the

Arbitration Proceeds in the form of a settlement check made payable to Norina DePasquale individually in the amount of $1,459,904.87. Also on March 9, 2004, Mr. DePasquale wrote a check from Mr. and Mrs. DePasquales' joint checking account payable to Penn Mutual in the amount of $948,516.66 in repayment of the policy loans. The check from Grogan Graffam was deposited into the DePasquales' joint checking account on March 10, 2004. On March 15, 2004, the check to repay the Penn Mutual Policy loans cleared.

Without knowledge of these transactions, Plastipak had filed an action in the Pennsylvania state court to execute upon the policy loan funds. On August 3, 2004, the Court of Common Pleas of Allegheny County issued a Memorandum Order which permitted execution on those Policy loan funds which were held in the joint checking account. However, only $2,521.19 was left in the joint checking account at the time of execution.

Plastipak now seeks leave of Court to attach and execute upon the Arbitration Proceeds that were transferred in March 2004 from the DePasquales' joint checking account to Penn Mutual to repay the policy loans. Plastipak recognizes that the law provides "safe havens" for: (1) assets held by Mr. DePasquale with his wife as tenants by the entireties; and (2) the Penn Mutual life insurance policy which designates his wife as beneficiary. *See* 42 Pa.C.S.A. § 8124 and Memorandum Order dated January 22, 2004. Plastipak also recognizes that it has the burden to demonstrate by clear and convincing evidence that the spouses did not intend to hold property as tenants by the entireties. Plaintiff's Brief at 7. *See also Johnson v. Johnson*, 908 A.2d 290, 296 (Pa. Super. 2006) (Pennsylvania law creates a rebuttable presumption that property is held as tenants by the entireties which may be overcome by clear and convincing evidence). Nevertheless, Plastipak contends that the manner in which the Arbitration Proceeds were

deposited into the joint checking account and then used to repay the Penn Mutual Policy loans subjects those proceeds to attachment and execution.

Plastipak theorizes that there is "clear evidence" that Mr. DePasquale and his wife Norina did not intend to hold the Arbitration Proceeds as tenants by the entireties and that Mr. DePasquale exercised sole ownership over those proceeds. Plastipak points to Mr. DePasquale's decision to use the Arbitration Proceeds to repay the Penn Mutual Policy loans the day before the arbitration check was deposited into the joint checking account and the fact that Mr. DePasquale physically prepared the check to repay the Penn Mutual Policy loans. Plastipak then argues that the utilization of the Arbitration Proceeds to repay the Penn Mutual Policy loans and thereby keep those funds out of Plastipak's reach constituted a fraudulent transfer that warrants the creation of a constructive trust which should allow Plastipak to attach and execute on the said proceeds in whatever form they currently exist, i.e., the Penn Mutual Policy.

Defendant, not surprisingly, takes a much different position. Defendant contends that the Arbitration Proceeds were entireties property and never the sole property of Mr. DePasquale and those funds were completely unrelated to the proceeds of the policy loans upon which Plastipak was permitted to execute. Defendant contends that both the Arbitration Proceeds and the bank account into which said Proceeds were deposited were tenants by the entireties property of Mr. and Mrs. DePasquale. Defendant argues that creditors have no standing to complain of a conveyance which prevents entireties property from falling into their grasp. *See C.I.T. Corp. v. Flint*, 5 A.2d 126, 129 (Pa. 1939) (creditors could not challenge a transaction which spouses engaged in for the admitted purpose of preventing husband from becoming the owner by survivorship). Thus, Defendant contends that the use of the Arbitration Proceeds to repay the

Penn Mutual Policy loans does not constitute a fraudulent transfer and Plastipak has no right to attach and/or execute on said Proceeds or the Policy. Defendant points out that the state court Order which permitted execution on proceeds of loans taken on the Penn Mutual Policy was entered several months after the Penn Mutual Policy loans had been repaid.

This Court will deny Plastipak's motion for leave to execute. There is absolutely no evidence that the commercial building or the Arbitration Proceeds were ever the individual property of Mr. DePasquale. The building was titled in the names of both spouses as tenants by the entireties prior to October 2003 and later titled in the name of **Mrs**. DePasquale individually. The escrow check from Grogan Graffam was issued solely to **Mrs.** DePasquale and it was deposited into the DePasquales' joint checking account. If, arguendo, the tenancy by the entireties had been severed or dissolved, the record reflects that Mrs. DePasquale would have been the sole owner of the Arbitration Proceeds. The Pennsylvania Superior Court held that the proceeds from settlement of a related lawsuit against ALCOSAN for damage to that same commercial building were owned by the DePasquales as tenants by the entireties. *Plastipak Packaging, Inc. v. DePasquale*, 937 A.2d 1106, 1110 (Pa. Super. 2007) (rejecting numerous arguments by Plastipak similar to those presented in this case). In particular, the Pennsylvania Superior Court reasoned that the deed transfer to Mrs. DePasquale was irrelevant because the ALCOSAN litigation continued to be pursued on behalf of both spouses. Under the facts and circumstances of this case, the distinction is irrelevant because regardless of whether the arbitration was on behalf of both spouses or only Mrs. DePasquale, the Arbitration Proceeds remained beyond the reach of Plastipak. There is no evidence from which the Court could conclude that the arbitration was solely on behalf of Mr. DePasquale or that the Arbitration

Proceeds were his individual property.

The only apparent individual action(s) taken by Mr. DePasquale was that he called Penn Mutual to determine the accrued balance on the policy loans and then physically prepared and signed the check to repay the policy loans. It is not uncommon or illegal for one spouse to write checks out of a joint (entireties) checking account – and it is well-established under Pennsylvania law that such an action does not destroy the entireties nature of such a joint account. *See, e.g., Johnson*, 908 A.2d at 296 ("either spouse has the power presumptively to act for both, so long as the marriage continues, without any specific authorization, provided the proceeds of such action inure to the benefit of both and the estate is not terminated"). Even if Mr. DePasquale decided unilaterally to repay the policy loans, a tenancy by the entireties is not severed by the independent action of one spouse. *In re Estate of Maljovec*, 602 A.2d 1317, 1320 (Pa. Super. 1992); *see also Fazekas v. Fazekas*, 737 A.2d 1262, 1265 (Pa. Super. 1999) (discussing two-part test for implied severance of tenancy by entireties: (1) misappropriation by one spouse; and (2) suit for accounting/division by other spouse). Even assuming, arguendo, that Mr. DePasquale acted unilaterally to repay the policy loans, there is absolutely no evidence in this record from which the Court could conclude that Mrs. DePasquale intended to sever the tenancy by the entireties or to relinquish her ownership of the Arbitration Proceeds.

In any event, the transaction of which Plastipak complains did not sever the entireties ownership of the Arbitration Proceeds because the action inured to the benefit of both spouses, and particularly, Mrs. DePasquale. Mr. DePasquale did not take funds ***out*** of the insurance policy for his own use, but rather, the Arbitration Proceeds were used to put funds back ***into*** the policy. This action restored the value of the Penn Mutual Policy for the benefit of Mrs.

DePasquale as she was the sole designated beneficiary of the policy. *See Plastipak Packaging, Inc. v. DePasquale*, 75 Fed. Appx. 86, 93 (3d Cir. 2003) (reasoning that Plastipak could execute on policy loans "because they are no longer being held in the life insurance policy for the benefit of DePasquale's wife."). Thus, repayment of policy loans did not sever the entireties ownership of the Arbitration Proceeds. Certainly, the evidence falls far short of the "clear and convincing" burden which Plastipak concedes it must meet.

A baseball analogy has been helpful to the Court in analyzing the facts and circumstances of this case. The asset (Arbitration Proceeds) which Plastipak seeks to trace, attach and execute upon started out as entireties property pursuant to the DePasquales' joint ownership of the commercial building involved in the parties' arbitration. In other words, that entireties asset was "safe" or "on base" and beyond Plastipak's reach. When ownership of the building was transferred to Mrs. DePasquale, the asset continued to be safe on base. When the Arbitration Proceeds were received through a check made payable to Mrs. DePasquale and deposited into a joint (entireties) checking account, said proceeds remained safe on base. Finally, when some portion of the Arbitration Proceeds were directed from the entireties account into the Penn Mutual Policy to repay policy loans, they remained safe on base and beyond Plastipak's reach. Even though Plastipak might have executed upon certain assets of Mr. DePasquale while they were "off-base" (e.g., when the assets were in the form of loans from the Penn Mutual Policy), Plastipak failed to tag ("attach") those assets in a timely manner before they were expended or again safely on base. In short, Plastipak failed to "pick-off" the base-runner and this inning of the game is over.

In accordance with the foregoing, the MOTION FOR LEAVE OF COURT TO PERMIT EXECUTION UPON FUNDS TRANSFERRED TO LIFE INSURANCE POLICY (Document No. 153) filed by Plaintiff Plastipak Packaging, Inc. is **DENIED**.

SO ORDERED this 27th day of January, 2009.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Nicholas P. Vari, Esquire
Email: nvari@klng.com
Timothy M. Strong, Esquire
Walter A. Bunt, Jr., Esquire
Eric R.I. Cottle, Esquire
Email: kleservice@klng.com

Michael R. Plummer, Esquire
Email: mplummer@tcslawfirm.com